IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KATHLEEN BROWN,                      )        CIVIL ACTION
                                     )
                Plaintiff            )        NO. 03-224E
                                     )
        Vs.                          )
                                     )
COST COMPANY,                        )
                                     )
                Defendant            )

**DEFENDANT, COST COMPANY'S BRIEF IN OPPOSITION
TO PLAINTIFF'S MOTION FOR NEW TRIAL PURSUANT TO F.R.C.P. 59**

**I.  SCOPE AND STANDARD OF REVIEW**

**A.  STANDARD OF REVIEW**

The District Court's inquiry in evaluating a motion for new trial on the basis of trial error

is twofold; it must determine first whether error was made in the course of the trial and

second whether that error was so prejudicial that refusal to grant a new trial would be

inconsistent with substantial justice.  Farra v. Stanley – Bostitch, Inc., 838 F.Supp. 1021 (E.D.

Pa. 1993); Montgomery County v. MicroVote Corp., 152 F.Supp.2d 784 (E.D. Pa. 2001),

affirmed 320 F.3d 440 (3rd Cir. Pa. 2003).   The Court cannot grant a motion for new trial on

the issues that the jury did not reach.  Id.

**B.  SCOPE OF REVIEW**

Where a motion for a new trial is based on the admissibility of evidence, the trial court

has great discretion, which will not be disturbed on appeal absent a finding of abuse. Rutter

v. Rivera, 191 F. Supp.2d 584 (E.D. Pa. 2002); Link v. Mercedes Benz of North America, Inc.,

788 F.2d 918 (CA.3 Pa. 1986).  A court should not grant a motion for new trial where the

moving party has not shown that the jury was confused or mislead by special interrogatories. Shushereba v. R. B. Industries, Inc., 104 F.R.D. 524 (W.D. Pa. 1985).  Absent showing of substantial injustice or prejudicial error, a new trial is not warranted and it is the court's duty to respect a plausible jury verdict.  Corrigan v. Methodist Hosp., 234 F. Supp.2d 494 (E.D. Pa. 2002).  Even if the Court erred in its rulings at trial, a new trial will not be ordered where the errors are harmless.  Id.  Trial errors are considered harmless where it is highly probable that the error did not affect the outcome of the case.  Id.  Unless a substantial right of a party is affected, a non-constitutional error in a civil case is harmless.  Id.

## II.  ARGUMENT

In her Motion for New Trial, Brown alleges the Court committed error in three areas: first, by refusing to permit Brown from introducing statistical evidence regarding Cost's workforce and the percentage of females employed by Cost; second, in the manner in which the Court phrased the second special interrogatory; and third, by granting Cost's Motion in Limine with respect to the introduction of evidence regarding Franco, a separate corporate entity.   For all of the following reasons, her Motion for a New Trial must be denied.

### A.    THE JURY DETERMINED THAT BROWN FAILED TO PROVE A PRIMA FACIE CASE.

To prevail in her claims under Title VII, Brown was first required to establish the four elements of a prima facie case as per the McDonnell Douglas burden-shifting analysis, in particular: (1) Brown's membership in a protected class; (2) application for an open position for which Brown was qualified; (3) Cost's rejection of Brown for an open position; and (4) thereafter Cost continued to seek applicants with Brown's qualifications.   McDonnell Douglas Corp. v Green, 411 U.S. 792, 93 S. Ct. 1817 (1973).  Brown, in her Brief in Support of Motion for a New Trial, contends that she proved all four elements.  Contrary to Brown's claims, the

jury clearly found that Brown failed to present credible evidence that a job opening was available at the time she applied. Specifically, the jury answered "no" to special interrogatory No. 2, which reads as follows, "Do you find that Plaintiff, Kathleen Brown, has proven by a preponderance of the evidence that a laborer position was available at Cost Company when she applied?" (Final Charge to the Jury). The jury answered "no." Therefore, as a matter of <u>fact</u>, Brown failed to present sufficient prima facie evidence of job availability.

Plaintiff's counsel's Brief is replete with mischaracterizations, half-truths and outright fabrications. Beginning on page 3, number (2) of her Brief, Brown, through counsel, blatantly mischaracterizes the testimony of Georgia Pawk, President of Cost (GP, Tr. Vol. 4 at 41-44). Plaintiff's Brief states, as a rationale for Cost rejecting Brown's application, "in other words, Brown was subject to the luck of the draw—if there were no vacancies at the time that she applied for work, she had no reasonable expectation of receiving employment from Cost in the future," and attributes this conclusion to Georgia Pawk. (Plaintiff's Brief, p. 3). In actuality, Ms. Pawk testified that Cost did not hire general laborers, only mason tenders; that Cost did not have a position open at that time for <u>operators</u>; that Ms. Pawk believed that Brown was a member of the operator's union, and one may only belong to one union at a time, and therefore could not have been in the laborer's union; and that Cost may hire only out of the union hall. (GP, Tr. Vol. 4 at 41-44). Never did Ms. Pawk state or even intimate that Brown was subject to the luck of the draw. The combined testimony of Dean Taylor, Cost foreman, and Ms. Pawk indicates that the reason that Cost did not hire Brown was that it was believed that Brown had inquired about an operator's job, and there were no positions open.

**B.      BROWN FAILED TO LAY A PROPER FOUNDATION FOR THE
         ADMISSIBILITY OF STATISTICAL EVIDENCE OF
         COST'S HIRING PRACTICES.**

The backdrop for the majority of Brown's Brief involves two monumental blunders on the part of Plaintiff's counsel, which Plaintiff's counsel, in his Brief, is now attempting to portray as errors of the Court.  First, counsel failed to conduct the proper discovery to ascertain the accurate male to female ratio in the applicable labor pool, thus making it impossible for him to lay a foundation upon which to introduce statistical evidence of Cost's hiring practices.  Second, Plaintiff's counsel failed to present expert testimony to substantiate and explain statistical data.

SCIM was a union job, meaning that Cost, under its Collective Bargaining Agreement with various unions, was obligated to receive its workers from the union halls.  The unions maintained a labor pool, from which they supplied workers to Cost as they were needed.  Cost contractually had to hire laborers from the local union halls first, and if there were no available workers, then from the "back-up" halls in the surrounding areas.  Only when all of the halls were devoid of workers could Cost hire workers "off the street."

The Court sustained Cost's objections to Brown's attempts to introduce evidence of Cost's affirmative obligations under the compliance regulations, its failure to satisfy those obligations, its failure to follow its own EEO policy, and a 162 to 0 hiring disparity at SCIM, not because statistical evidence is improper in a gender discrimination case, but because the statistical evidence Brown was attempting to introduce was meaningless unless she had established a proper basis for comparison, i.e., the gender makeup of the available labor pool.  Brown continually attempted to argue to the jury that Cost discriminated because there were 162 males hired at the Marienville site and 0 females.  Brown could have laid a

foundation during direct examination of her own witness, Ronald Barrett, the business agent for Local 952 of the Laborers' International Union of North America at the time in question. However, Plaintiff's counsel never asked Mr. Barrett about the makeup of the union's labor pool. Likewise, Brown failed to call any representative of, or present documents from, any of the other unions. In sum, Brown never presented evidence of the ratio of males to females in the appropriate hiring pool.

Plaintiff's counsel never ascertained, through discovery, and presented no evidence of, the actual number of applicants the union halls handled; how many persons were sent by all of the union halls to the various Cost jobs (Plaintiff's counsel limited his discovery to the SCIM site); what the various unions were that sent workers to Cost; the number of women Cost employed outside of the SCIM site; and, most importantly, how many women there were on the union rosters as compared to the number of men. Because Plaintiff's counsel never established the aforementioned, he was unable to lay the proper foundation that would have permitted its admission. Additionally, Plaintiff's counsel also failed to establish the relevant time period for comparative purposes, or the qualifications of the applicants. Consequently, without the proper foundation being laid, the Court had no choice but to sustain defense counsel's objections to questions concerning the number of women on the SCIM job.

The Court rightfully held that the number of women that Cost had on the SCIM job would be irrelevant without laying the foundation as to the number of women in the entire applicable labor pool. In a case of discrimination in hiring or promoting, the relevant comparison is between the percentage of minority employees and the percentage of potential minority applicants in the qualified labor pool. The case most on point is <u>Carter v. Ball</u>, 33 F.3d 450 (4th Cir. 1994). In <u>Carter</u>, the plaintiff, an African-American, tried to prove racial

prejudice through statistical evidence. The court acknowledged that statistical evidence can be appropriate, but only when it is properly compared to the potential minority applicants in a qualified labor pool. The court stated as follows:

> Disparate treatment occurs when an employer treats certain people less favorably than others on the basis of a protected classification such as race. This court's broad pronouncement that statistical evidence is "unquestionably relevant" in a Title VII case cannot be read to foreclose the exclusion of evidence with little or no probative value. The usefulness of statistics depends on the surrounding facts and circumstances. In a case of discrimination in hiring or promoting, the relevant comparison is between the percentage of minority employees and the percentage of potential minority applicants in the qualified labor pool. The mere absence of minority employees in upper level positions does not suffice to prove a prima facie case of discrimination without a comparison to the relative labor pool. Moreover, if a plaintiff offers a statistical comparison without expert testimony as to methodology or relevance to plaintiff's claim, the judge may be justified in excluding the evidence. In the case at bar, Carter sought to introduce plaintiff's exhibit 50 as evidence that none of the 30 managerial positions in the Analysis Directorate of NTIC were filled by African-American personnel . . . even if we accept the assertion that none of the positions was filled by an African-American, we have found no proffer of supporting evidence relating to the pool of African-Americans qualified for those positions.

Id. at 456 (Citations Omitted).

Brown argues that the total absence of female employees at the Marienville jobsite should be sufficient statistical evidence of discriminatory motive. The Carter opinion also addresses this issue:

> Carter argues that we should infer the presence of qualified African-Americans in the labor pool because Carter himself was qualified. He also points to the "inexorable zero," i.e., the total lack of African-Americans in the Analysis Directorate, which he believes to be infallible proof of discriminatory motive. Carter attributes the absence of proffers on the record to the district court's "blanket exclusion" of statistical evidence. We are not persuaded by his arguments.

The <u>Carter</u> court rejected this argument stating:  "without evidence of how many African-Americans were qualified for positions at the level to which Carter sought to be promoted, there could be no reliable proof of under representation."  <u>Id</u>. at 457.  Other courts have held that the mere absence of minority employees in upper level positions does not suffice to prove a prima facie case of discrimination without a comparison to the relevant labor pool.  <u>Moore v. Hughes Helicopters, Inc.</u>, 708 F.2d 475, 484 (9th Cir. 1983); <u>see also</u> <u>Hagans v. Andrus</u>, 651 F.2d 622, 627 (9th Cir. 1981) (regarding low percentage of women in high level positions as "meaningless" without evidence of pool of qualified women applicants), cert. denied 454 U.S. 859 (1981).  Although the Third Circuit has not addressed this issue directly, there is no indication that it disagrees with the holding of the United States Supreme Court in <u>Hazelwood School Dist. v. United States</u>, 433 U.S. 299, 97 S. Ct. 2736, 53 L. Ed. 2d 768 (1977), as discussed below.

The United States Supreme Court has similarly held that in discrimination cases, the appropriate comparison is between the percentage of minority employees and the percentage of prospective minority applicants in the qualified labor pool.  In <u>Hazelwood</u>, the Supreme Court held that the District Court's comparison of Hazelwood's teacher workforce to its student population "fundamentally misconceived the role of statistics in employment discrimination cases."  <u>Id</u> at 308.  The Court upheld the Appeals Court's view that "a proper comparison was between the racial composition of Hazelwood's teaching staff and the racial composition of the qualified public school teacher population in the relevant labor market."  <u>Id</u>.  <u>Hazelwood</u> demonstrates that it is imperative to establish the appropriate labor pool in order for the comparison of statistical evidence to have relevance.  This is precisely what Plaintiff's counsel failed to do.

In the instant case, Plaintiff's counsel failed to present any statistical data regarding the relevant labor pool.  Judge McLaughlin made it abundantly clear during the numerous colloquies at side bar and in the Judge's chambers that this evidence would be admissible, were Plaintiff's counsel to lay the proper foundation.  Judge McLaughlin expressed his reasoning as follows:

> The mere fact that there were no women working at that jobsite in the absence of any other contextual evidence such as the size of the pool, the available – the women who would have been available from the union or otherwise, the number of qualified women who would have been available, the number of women who applied – in other words, all those factors that form the availability of the pool, in the absence of that, the raw figure of zero is, in my view, irrelevant, and it would cause the jury to speculate.

(Tr. Vol. 3, at 12-13).

Additionally, the Judge gave Plaintiff's counsel numerous opportunities to lay the proper foundation. (see (Tr. Vol. 3, at 12-13); (Tr. Vol. 3, at 23); (Tr. Vol. 3, at 29); (Tr. Vol. 3, at 50-51); (Tr. Vol. 3, at 138)).  It was Plaintiff's counsel, and not the Court, who decided not to obtain or to present evidence of statistical data necessary to lay a foundation that could have made the number of women on the SCIM job relevant.

Admission of the ratio of men to women at the SCIM without any statistics with regard to the labor pool or the qualifications of the other applicants would not be an accurate comparison.  Only a comparison to the established labor pool would be appropriate.  In Mayor of Philadelphia v. Educational Equality League, 415 U.S. 605, 94 S. Ct. 1323, 39 L. Ed. 2d 630 (1974), the Educational Equality League sued the former mayor of Philadelphia, claiming that he had discriminated against African-Americans in his appointments to the 1971 nominating panel. As a finding of fact, the District Court concluded that the plaintiff had failed to prove that the panel was appointed in violation of Equal Protection. The Third Circuit Court

of Appeals relied on statistical data rejected by the District Court and went outside the District Court's findings of fact to conclude that the plaintiff had established a prima facie case.  The Supreme Court reversed the judgment, holding that the type of proof relied on by the Court of Appeals was too fragmentary and speculative.  The Supreme Court held that the Court of Appeals failed to consider that nine of the thirteen seats were restricted to the highest ranking officers of designated categories of citywide organizations and institutions. Therefore, "it can [not] be assumed that all citizens are fungible for purposes of determining whether members of a particular class have been unlawfully excluded." Id at 620.  At least with regard to the nine seats on the Panel, "the relevant universe for comparison purposes consists of the highest ranking officers of the categories of organizations and institutions specified in the city charter, not the population at large." Id.

In the instant case, Brown was attempting to introduce the ratio of men to women employees without first establishing "the relevant universe for comparison purposes."  By failing to establish the appropriate statistical evidence with regard to the relevant labor pool, Plaintiff's counsel left the Court no option but to exclude evidence of the gender composition of the SCIM workforce.

### C.    BROWN FAILED TO CALL AN EXPERT WITNESS.

Even if Plaintiff's counsel had called union representatives as witnesses, had asked Mr. Barrett about his labor pool statistics, and had produced documentation of the gender makeup of the relevant labor pool, the statistical breakdown would still require expert testimony to discern the meaning of the raw data.  Without the aforementioned data, Plaintiff's counsel was unable to offer expert testimony to analyze it.  The United States Supreme Court, in Hazelwood, opined, "When special qualifications are required to fill

particular jobs, comparisons to the general population (rather than to the smaller group of individuals who possess the necessary qualifications) may have little probative value." Hazelwood, 433 U.S. at 309.  The Court explains that a precise method of measuring the significance of such statistical disparities involves calculation of the "standard deviation" as a measure of predicted fluctuations from the expected value of a sample. Id.  Without the appropriate data regarding the labor pool, and an expert to extrapolate what the data means, any allusion to the ratio of men to women in the SCIM workforce would not be probative. Appropriately, during the trial, Judge McLaughlin held, "Just raw statistical evidence, whether it would cut one way or the other, is completely non-probative and speculative absent anything else." (Tr. Vol. 2, at 183).

In an attempt to prove that the rationale(s) for not hiring Brown were pretextual, as per Fuentes v. Perskie, 32 F.3d 759 (3rd Cir. 1994), Brown claims in her Brief that she "sought to show that, because Cost had failed to meet its affirmative action obligations… chronically and repeatedly, Cost was not committed to the goal of equal employment…" (Plaintiff's Brief, p. 3).  However, Cost's commitment to equal employment goals, the percentage of women in its workforce, and its compliance with its own EEO policy, have no relevance or bearing on the second and fourth elements of Brown's prima facie case.  Those items might only be relevant to show the pretextual nature of Cost's rationale for not hiring Brown or to show that Cost intended to discriminate against her.  Brown alleges that Cost had a duty under the regulations of the U.S. Office of Federal Contract Compliance to increase the numbers of women in its workforce, or failing that, to demonstrate that it had taken specific, affirmative steps designed to achieve that goal.  However, at trial, Brown never provided any proof of these facts, not only in her presentation of evidence before the jury, but also in her offers of

proof before Judge McLaughlin. Brown also failed to show evidence of anything that she obtained during discovery indicating that Cost's workforce decreased from 2.38 percent to 1.54 percent female, that there was a particular percentage of females employed at Cost, that Cost had affirmative obligations under particular federal guidelines, and that Cost "could not defend its failure to meet the 6.9 percent target." Not only is none of this evidence in existence, none of it is evidence of discrimination, especially without comparing it to the appropriate labor pool.

All thirteen (13) of the enumerated items listed on pages 4 through 6 of Plaintiff's Brief, which Brown sought to establish during the trial, were excluded by the Court, not for lack of legal relevance, but because, once again, Plaintiff's counsel failed to lay a proper foundation. As stated earlier, Brown called Ronald Barrett, the Business Manager of Local 952 of the Laborers International Union of North America, as her own witness in her case in chief. Brown failed to ask basic questions of Barrett concerning the number of female members in the local union. Brown failed to call any representatives from other local trade unions from whom Cost was required to hire laborers under its Collective Bargaining Agreement to ascertain the relevant male/female demographics. Brown also failed to introduce any evidence concerning female employees at other jobsites or in other positions with Cost. The Court properly found that simply presenting the 162 to 0 disparity, without any basis for comparison, would be unduly prejudicial to Cost, given the fact that the Plaintiff has the burden of proof.

Brown argues that she was prohibited from introducing evidence of applicant data because of Cost's failure to maintain such records. Brown further contends that the Court ignored this fact. The facts, however, clearly demonstrate that the reason Cost does not

keep applicant data is simply because Cost does not field the applications. Because SCIM is a union job, the unions accept the applications and then send the workers to Cost. (GP, Tr. Vol. 4 at 64). Plaintiff's counsel failed to conduct extensive discovery to obtain the relevant applications from the unions, and, therefore, has no one to blame but himself. Had Plaintiff's counsel properly gathered discoverable information, perhaps he would have been able to lay a proper foundation for the admissibility of this evidence. Because he failed to do so, this Court's rulings were proper.

Not only should Brown have been required to present evidence of the percentages of females in the union pools, Brown should also have been required to present evidence of the percentage of "applicants" on the jobsite. Brown could not do this, because records of these "applicants" do not exist. Brown suggests that this is somehow Cost's fault. Cost has done nothing wrong regarding records it maintained of who happened to walk on the jobsite. Brown has the burden of proving her case. She can prove discrimination directly, or she can attempt to prove discrimination through statistical evidence. If the evidence does not exist, that is her problem, not Cost's. She chose to file suit because she believed that Cost discriminated against her. Her inability to prove this should be visited upon her, not Cost.

Brown argues, "The Court repeatedly blocked Brown's attempts to introduce evidence of Cost's affirmative obligations under the compliance regulations, its failure to satisfy those obligations, and its failure to follow its own EEO policy." All of the cites to the trial transcript that Brown proffers as evidence in support of this position, however, for all the reasons previously mentioned, do no more than further support the Court's decision to exclude it for lack of foundation. Additionally, during the trial, Brown was unable to establish that there was a job available on July 31, 2002. The excluded evidence had nothing to do with Brown's

ability to establish job availability on July 31, 2002. Plaintiff's counsel, repeatedly, throughout his Brief, attempts to confuse these issues.

**D.    THE COURT'S CURATIVE INSTRUCTION TO THE JURY WAS APPROPRIATE.**

In his closing argument, Plaintiff's counsel, in blatant defiance of the Court's ruling, referred several times to the alleged 162:0 ratio of men to women at SCIM. On this issue, the Court gave a curative instruction during its charge to the jury. Again, the Court had ruled several times during the course of the trial that this evidence was not relevant without first laying a proper foundation and had properly excluded the evidence.

Next, Plaintiff's counsel contends that Cost is responsible for the lack of data. To accept this reasoning, however, would be to ignore the testimony of Brown's own witness, Georgia Pawk, who testified that Cost maintains an EEO file, which contains a record of any minority that contacted Cost for employment. (GP, Tr. Vol. 4 at 151). This is consistent with 41 C.F.R. § 60-4.3(7)(c). Had Plaintiff's counsel simply reviewed this file before asking questions before the jury, he may have been less inclined to resort to blaming the Court for his ineptitude. Even assuming, *arguendo*, that the Court erred in giving the curative instruction, when the jury found that there was no job available on July 31, 2002, the issue became moot. Therefore, even if the curative instruction was given in error, (which it clearly was not) this was harmless error, because the <u>Fuentes</u> issue of pretext was removed from the jury's purview.

Brown argues that the Court's rulings prohibiting Brown from introducing the aforementioned evidence were procedurally improper, caused substantial, dispositive, and improper prejudice to Brown's case, and constitute reversible error. However, the Court's pronouncement that it would consider excluding the "Compliance Regulation/Affirmative

Action" evidence, as it related to Cost, came after deciding Cost's Motion in Limine. Prior to the Motion in Limine, the issue had not been presented to the Court. In fact, the Court's indication to Brown that it would consider excluding such compliance evidence, which was made prior to the start of the trial, gave Brown sufficient warning that it needed to present proper foundation evidence in order to gain admissibility of that evidence. Yet, Plaintiff's counsel failed to heed this notice.

Brown's Brief, like the presentation of her case at trial, is full of unfounded accusations about Cost, which were intended to divert attention from the deficiencies in her case. For example, Brown improperly uses the term "Cost's alter ego" when referring to Franco. As Plaintiff's counsel should be aware, "alter ego" is a legal term of art. Black's Law Dictionary defines "alter ego" as a "corporation used by an individual and conducting personal business, the result being that a court may impose liability on the individual by piercing the corporate veil when fraud has been perpetrated on someone dealing with the corporation." Black's Law Dictionary, 7th Edition 1999. Plaintiff's counsel has no facts to support his conclusions, and uses incorrect terminology to suggest that Cost is an evil abuser of women's rights. As he did at trial, counsel for Brown is playing fast and loose with the facts, evidence, and legal terms.

### E.    PLAINTIFF'S COUNSEL MISCHARACTERIZES THE HOLDINGS IN THE "INEXORABLE ZERO" CASES.

Plaintiff's counsel once again mischaracterizes a term of art, "inexorable zero," to argue that the Court was in error. What International Brotherhood of Teamsters v. United States, 431 U.S. 324, 342, n. 23 (1977) and its progeny stand for, in reference to the term "inexorable zero," is as follows: One may not attack the accuracy of a statistical evidence comparison between the composition of the company's work force and the appropriate labor

pool, especially when the number of persons in a protected class is very low or zero.  By suggesting that <u>International Teamsters</u> applies to his case, counsel yet again ignores his failure to present foundational evidence.

The case of <u>Bruno v. WB Saunders Co.</u>, 882 F.2d 760 (3rd Cir. 1989), as well as other cases cited by Brown in her Motion for New Trial, simply do not apply to Brown's case.  For example, in <u>Bruno</u>, the plaintiff presented an expert witness who prepared studies that compared whether employees of over 40 years of age receive transfers or promotions in proportion to the percentage of all employees over 40.   Again, Brown failed to provide appropriate foundation evidence to use statistical evidence and also chose not to use an expert witness to gather and analyze this alleged statistical information.   Accordingly, the Court was justified, under Fed. R. Evid. 403, in excluding the raw data of 162 to 0, without Brown having first established the gender breakdown of the labor pool and without expert testimony to give meaning to the evidence.  Without expert testimony, the limited probative value of the evidence was plainly outweighed by the possibility it might mislead or confuse the jury.   It has been held that if a plaintiff offers a statistical comparison without expert testimony as to methodology or relevance to plaintiff's claim, a judge may be justified in excluding the evidence.  <u>Williams v. Cerberonics, Inc.</u>, 871 F.2d 452, 455 N.1 (4th Cir. 1989).

Brown's proffer of the excluded evidence was not collateral to other evidence going to the two prongs under <u>Fuentes</u>.   The excluded evidence had no material relationship to whether there was job availability or whether the job remained open after Brown applied. Brown's contention that the Court's exclusion of this evidence "stripped Brown of the ability to prove both pretext and intentional discrimination," is baseless.  (Plaintiff's Brief, p. 11)  First, the jury never reached the issue of pretext or intentional discrimination by Cost.  Therefore,

Brown's argument regarding the admissibility of evidence to prove such is irrelevant. Second, Brown argues that the 162-0 disparity on the SCIM Project shows that Cost failed to follow its own affirmative action plan and that this was relevant evidence to prove pretext and/or discriminatory intent. Once again, Brown fails to recognize what the Court repeatedly stated during trial (i.e. lay the foundation) before leaping to the conclusion that Cost had failed to follow its own affirmative action plan. Brown cites various cases in support of its proposition that the 162 to 0 disparity is evidence of discrimination. All of her cases suggest that properly presented evidence of statistical discrimination is admissible. But Brown never "properly presented" statistical evidence.

Brown again ignores the facts of record and argues in her Brief that Cost illegally or improperly failed to maintain application data in violation of 41 CFR Section 60-4.3(7)(c). Brown's allegation of such a violation is scandalous and a violation of F.R.C.P. 11. Cost has done nothing illegal or improper. As was previously demonstrated, Brown's own witness, Georgia Pawk, testified that Cost maintains an EEO file, which contains a record of any minority that contacted Cost for employment, which is consistent with 41 C.F.R. § 60-4.3(7)(c). (GP, Tr. Vol. 4 at 151). Plaintiff's counsel has no one to blame but himself for failing to gather the relevant applicant data via Cost's records for other jobs, or the appropriate union records. For whatever reason, Brown chose not to question Ronald Barrett regarding the laborer applicant pool during the Marienville Project. Her failure to do so is her fault and not the fault of Cost or the trial Judge.

Brown accuses Cost of acting "no differently than a party who knowingly destroys evidence," a scandalous charge having no evidentiary support and clearly violating F.R.C.P. 11. Brown also makes unsubstantiated allegations about statistical proof of prejudice. She

suggests that Brown was entitled to a spoliation inference that missing data would have been adverse to Cost and favorable to Brown. In essence, Plaintiff's counsel is asking the Court to reward him for his inadequate preparation and presentation of his case. Plaintiff's counsel never asked for these items in discovery, and is now suggesting to the Court that the foundation evidence somehow does not exist. Brown also suggests, without putting any evidence before the Court, that the data, if available, would be adverse to Cost. This statement is ludicrous and has no basis whatsoever in the record.

Brown cites language from Aman v. Cort Furniture Rental Corp., 85 F.3d 1074 (3rd Cir. 1996), to suggest that this Court should give great deference to Plaintiff's attempting to prove discrimination through statistical evidence. However, the plaintiff in Aman had appealed the District Court's grant of summary judgment to the defendant. The Court of Appeals, in viewing the evidence in a light most favorable to the plaintiff, vacated the grant of summary judgment. In the instant case, Brown was at trial, with a completely different evidentiary standard. Had Brown conducted her case differently, her counsel may not have needed to get involved in a fishing expedition at the trial. Plaintiff's counsel is unable to show this Court now, and was unable to show the Court at trial, what statistical evidence of discrimination he is talking about. Had Brown requested this information in discovery, or subpoenaed union records, perhaps she may have found some appropriate statistical evidence, or perhaps not. This Court does not know, and that is the point; Brown is bound by the record that she created.

Brown cites Glass v. Philadelphia Electric Co., 34 F.3d 188 (3rd Cir. 1994), for the proposition that the Third Circuit disapproves of the practice of excluding evidence in discrimination cases. What Brown fails to point out is that the Court in Glass held that

because plaintiff Glass had introduced sufficient evidence to establish a prima facie case, the court erred in excluding evidence proffered to prove intentional discrimination. The Court found that the preclusion of the evidence deprived Glass of a full hearing on the issue of pretext and was, therefore, not harmless error. Id. 34 F.3d at 195. As stated earlier, in the instant case, the jury found that Brown failed to provide sufficient evidence to establish a prima facie case. Accordingly, even if this Court believes it has committed error in precluding the statistical evidence proffered by Brown, the error was harmless in that the jury never reached the issue of whether Cost's reasons for not hiring Brown were pretextual. Therefore, the holding in Glass is inapplicable here.

F.    **BROWN WAIVED HER CHALLENGE TO THE VERDICT SLIP BY AGREEING TO THE VERDICT SLIP.**

The jury found, at the second special interrogatory of the verdict slip, that Brown failed to establish the existence of an open position for laborer when she applied for employment with Cost. Because there is no way of knowing the jury's reasoning in this matter, Brown's contention that the jury decision regarding this second special interrogatory was not based on its failure to believe Brown is pure speculation. Additionally, there is no evidence to show what testimony the jury believed or did not believe.

Because Brown failed to prove job availability, she now argues that evidence of job availability was solely in Cost's possession. This argument is false and misleading and is not based on the evidence of record. Brown fails to acknowledge that a major weakness of her case has always been the inability to prove job availability. This, however, is her burden to prove. Brown chose to pursue her case through an unusual method of cross-examining employees of the Defendant instead of presenting witnesses on her own behalf. She is bound by the testimony these witnesses provided. Just because Brown failed to make her

case through this method does not mean she is now entitled to a new trial to attempt to prove it in another fashion. It was her burden to prove discrimination during the trial, and she failed to do so.

Brown argues that the special interrogatory presumably should have been phrased such that a job was available on July 31, 2002 or any time thereafter. In other words, Brown argues that the second interrogatory should have been "open ended or not restricted to job availability on the date in which Kathleen Brown applied, July 31, 2002." This would be improper and not in accordance with the law or the facts of this case. Fuentes v. Perskie, 32 F.3d 759 (3rd Cir. 1994). It was Plaintiff's contention that she appeared on the jobsite on July 31, 2002 and applied for a laborer's position with Cost. The evidence was clear that Cost's labor needs changed on a daily basis. It would have been improper to charge the jury that if an opening arose some time after she applied on July 31, 2002, that Plaintiff established her prima facie burden of proving job availability. Additionally, because Brown left only an address (not even her address) and no telephone number, Cost was unable to contact her had a position became available on any given day.

There was nothing improper regarding the special interrogatories sent to the jury, and therefore the Court did not err. Judge McLaughlin was extremely accommodating to all of counsel's requests and suggestions regarding the jury slip. For Plaintiff's counsel to now blame the Court for his own mishandling of the case is preposterous. Just prior to closing arguments, Plaintiff's counsel asked the Court, "Your Honor, you also are allowing us to voice an objection to the verdict slip?" and the Court answered, "Sure. Do you have a thought on that right now?" (Tr. Vol. 4, at 148). The Judge made each of the changes requested of him, by Plaintiff's counsel, prior to Cost's closing argument. (see Tr. Vol. 4, at 149-57).

Judge McLaughlin repeatedly asked for suggestions to improve the charge.  The Judge even made changes to the very section, as per Plaintiff's counsel's suggestions, that Plaintiff's counsel now contends were in error.   Subsequently, Plaintiff's counsel requested that the Court make changes to the charge after Cost's closing arguments, but at no time did he suggest that he had a problem with the phrasing of the second special interrogatory. Accordingly, Brown waived the right to now object to the verdict slip.  (see Tr. Vol. 4 at 149-150).

### G.      THE COURT PROPERLY GRANTED COST'S MOTION IN LIMINE.

To round out his expedition through the absurd, Plaintiff's counsel revisits the Court's ruling on Cost's Motion in Limine, and Plaintiff's counsel's malapropos use of the term "alter ego" in referring to Franco.  Whether Plaintiff's counsel "argued at length that Cost and Franco were one and the same entity" is irrelevant.  What was crucial to the Court's proper ruling was the dearth of evidence to substantiate Plaintiff's counsel's absurd allegations; evidence that did not exist, and which Brown never even attempted to acquire through discovery.  The Court's ruling on Cost's Motion in Limine was appropriate in that Franco, a totally separate corporate entity of Cost, was not a party to this litigation and, therefore, any evidence regarding Franco's hiring practices was totally irrelevant with respect to whether Cost discriminated against Brown on the basis of gender.

Where a contention for new trial is based on the admissibility of evidence, the trial court has great discretion, which will not be disturbed on appeal absent a finding of abuse. The trial court has broad discretion in ruling on a motion for new trial on the grounds of improperly admitted or excluded evidence. . . and this broadened discretion is exemplified by the fact that in ruling on a motion for new trial, the trial court is permitted to consider credibility

of witnesses and weigh evidence.  Griffiths v. CIGNA Corp., 857 F. Supp. 399, affirmed 60

F.3d 814 (E.D. Pa. 1994);  Link v. Mercedes-Benz of North America, Inc., 788 F.2d 918

(C.A.3 Pa. 1986).

Furthermore, Plaintiff's counsel's characterization of Cost's President, Georgia Pawk,

as a "knowing and cynical manipulator of federal equal employment goals" is scandalous,

outrageous and borders on the defamatory.  Moreover, this puerile statement is not

supported by the facts and evidence of this case.  Plaintiff's counsel has, once again, made

false representations to this Court and therefore violates F.R.C.P. 11.

Accordingly, Defendant, COST COMPANY, respectfully requests that this Court deny

Plaintiff's Motion for New Trial.

Respectfully submitted,

LUTZ & PAWK


/s/Michael J. Pawk
Michael J. Pawk, Esq.
Atty. For Defendant
Pa. ID 54413
THE MORGAN CENTER BUILDING
SUITE 102
101 E. DIAMOND STREET
BUTLER, PA  16001
(724)285-3400

## **CERTIFICATE OF SERVICE**

I, **MICHAEL J. PAWK, ESQUIRE,** hereby certify that a true and correct copy of the

foregoing **DEFENDANT, COST COMPANY'S BRIEF IN OPPOSITION TO PLAINTIFF'S**

**MOTION FOR NEW TRIAL PURSUANT TO F.R.C.P. 59** was served on the following on this

the 15th day of  December 2005, **VIA REGULAR FIRST-CLASS MAIL:**

Richard S. Matesic, Esquire
Attorney at Law
1007 Mount Royal Blvd.
Pittsburgh, PA   15223


/s/Michael J. Pawk                              
Michael J. Pawk, Esq.
Atty. For Defendant
Pa. I.D. 54413
LUTZ & PAWK
THE MORGAN CENTER BUILDING
SUITE 102
101 E. DIAMOND STREET
BUTLER, PA  16001
(724)285-3400