IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KATHLEEN BROWN,                    Civil Action No. 03-224

                Plaintiff,

v.

COST COMPANY,

                Defendant.

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF AMENDED MOTION FOR NEW TRIAL PER F.R.C.P. 59**

**Argument**

**Introduction**.

    This brief responds to two arguments raised by Defendant, Cost Company ("Cost"), in its Brief in Opposition to Plaintiff's Motion for New Trial per FRCP 59: First, that Ms. Brown failed to lay a proper foundation for the evidence of a complete gender disparity at the SCI Marienville worksite in 2002; and Second, that Ms. Brown has waived her objection to the Court's phrasing of the second interrogatory on the verdict form.

**Cost's assertion that Brown failed to lay a foundation for the evidence that Cost employed no females at SCI Marienville is, at best, a red herring**.

    In its brief, Cost repeatedly complains that Brown failed to lay a foundation for the evidence that Cost employed no females at the SCI Marienville worksite, specifically, the gender profile of the applicant pool for the job of mason tender. Cost's assertion implies necessarily that Brown had a duty to lay such a foundation before presenting her evidence. That assertion, and the multiple assumptions on which it is

1

based, is entirely misleading and false.

In the first place, no applicant-pool foundation is required where the plaintiff is attempting to demonstrate the complete absence in the job category of members of the protected class. **International Brotherhood of Teamsters v. United States**, 431 U.S. 324, 342, n. 23 (1977)("In any event, fine tuning of the statistics could not have obscured the glaring absence of minority line drivers. As the Court of Appeals remarked, the company's inability to rebut the inference of discrimination came not from a misuse of statistics but from "the inexorable zero."); accord, **U.S. v. Gregory**, 871 F.2d 1231, 1245, n. 20 (4th Cir. 1989)(". . . Supreme Court does not require fine tuning of statistics when the inference of discrimination arises from "the inexorable zero" . . . In other words, the focus in this case may properly be upon the fact that the Sheriff's Office has *never* hired a woman as a deputy.")(emphasis in original); **Loyd v. Phillips Brothers, Inc.**, 25 F.3d 518, 24 n. 4 (7th Cir. 1994)(. . . "[T]he100% sex-segregated workforce is highly suspicious and is sometimes alone sufficient to support judgment for the plaintiff.").

Second, although such a foundation may be required in disparate impact cases, where statistical evidence is often the only evidence offered by the plaintiff (who need not demonstrate the employer's intent to discriminate[1]), the same cannot be said for disparate treatment cases, where the statistical evidence represents only a portion of

---

[1] See, **Teamsters**, 431 U.S. at 335, n. 15 ("Claims of disparate treatment may be distinguished from claims that stress 'disparate impact.' The latter involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity . . . Proof of discriminatory motive, we have held, is not required under a disparate-impact theory."),

the evidence offered by the plaintiff to demonstrate the employer's intent.  In such cases, no applicant-pool foundation is required.  **Bruno v. W.B. Saunders Co.**, 882 F.2d 760, 766-67 (3d Cir. 1989)("Unlike the main cases cited by the defendants, this is not a class action disparate impact or [class action] disparate treatment case. . . By contrast, in individual disparate treatment cases such as this, statistical evidence . . . need not be so finely tuned.")(internal citations omitted); accord, **Abrams v. Lightolier**, 50 F.3d 1204, 1217 (3rd Cir. 1995); **MacDissi v. Valmont Industries, Inc.**, 856 F.2d 1054 (8th Cir. 1988)(rejecting challenge to sample size where statistical evidence used in combination with other, independent evidence of disparate treatment); **Daines v. City of Mankato**, 754 F.Supp. 681 (D.MN 1990)(rejecting challenge to proffered statistics relying on census rather than applicant flow data)("The Court finds that plaintiff's statistical evidence supports an inference of discrimination.  *Minimally, the fact that no women were appointed into the officials and administrators category is surely the kind of fact which could cause a reasonable trier of fact to raise an eyebrow*.")(*citing,* **MacDissi**)(emphasis added).

Third, because of Cost's own misfeasance, Brown would have had no way of demonstrating the gender profile of the applicant pool, had there been a legal requirement that she do so.  According to federal regulations, Cost had a *duty* to compile and maintain the applicant pool evidence in question.  41 C.F.R. § 60-4.3(7)(c) (contractor must maintain a current file of the names, addresses and telephone numbers of each female off-the-street applicant, noting what action, if any, contractor took with respect to these individuals).  But Cost abjectly failed to comply with this

obligation, and is well aware that because of its failure, *the evidence does not exist*. According to Cost Foreman, Dean Taylor, and Cost's President/Equal Employment Compliance Officer, Georgia Pawk, Cost kept no records of persons who applied with Cost for work. Testimony of Dean Taylor, Vol. 3 at 91; Geogia Pawk, Vol. 4 at 67. Indeed, in her first document request, Brown had requested that Cost produce "all the applications for employment received by [Cost] in connection with the Marienville project." Plaintiff's First Request for Production of Documents, ¶ 3. **(Exhibit 1)**. In its response, Cost provided no applications whatsoever, nor any documentation that would permit the determination of the size of the mason tender applicant pool at SCI Marienville (or at the union hall), or its gender composition.

Yet in its brief Cost argues, outrageously, that the non-existence of such evidence is somehow ***Brown's*** (or her counsel's) fault. See, Defendant's Brief at 4 ("The backdrop for the majority of Brown's Brief involves two monumental blunders on the part of Plaintiff's counsel . . . First, counsel failed to conduct the proper discovery to ascertain the accurate male to female ratio in the applicable labor pool, thus making it impossible for him to lay a foundation upon which to introduce statistical evidence of Cost's hiring practices.") In other words, Brown should be faulted for failing to gather evidence that Cost, in violation of its custodial duties, either threw away or never gathered in the first place.[2] It is difficult to imagine a more disingenuous assertion by the Defendant. As Cost knows better than anyone, it did whatever it could to prevent

---

[2]Taylor further testified that he usually only asked of applicants that they provide him with their name and telephone number on a slip of paper (Vol. 3 at 48) and that he did not retain any records of people who went to the site to seek work. (Vol. 3 at 91).

plaintiffs in Brown's position from ever establishing such a "foundation."

Next, Cost attempts to shift focus from itself onto the Laborers International Union of North America ("LIUNA"), suggesting that Cost's hands were tied by its union commitments, as it was required to hire every referral that the LIUNA supplied to Cost. Defendant's Brief, at 4.  But this ploy leaves unaddressed the issue at hand, *viz*., the whereabouts of the applicant pool evidence that Cost was required to maintain.  At the same time, Cost's approach also conveniently ignores the fact that federal law rejects the such a "union referral" defense.  41 C.F.R. § 60-4.3(5) (contractor cannot justify failure to meet hiring goal of 6.9% females on basis that labor unions failed to refer sufficient numbers of female candidates).

In its brief, Cost suggests that Brown could have sought applicant pool data from LIUNA.  Defendants's Brief at 5. But this would make a mockery of the federal regulatory scheme just cited.  Because a union's failure to refer sufficient numbers of females is irrelevant to the issue of whether a contractor has failed to hire sufficient numbers of females, Cost's insistence that Brown produce evidence of the gender makeup of the LIUNA referrals is entirely misplaced.

Cost also accuses Brown of failing to substantiate her claims that the percentage of females across Cost's entire workforce (which includes clericals and other non-trades persons) actually declined from 2.38 % in 2001 to 1.54 % in 2002.  The accusation is meritless, and disingenuous in the extreme, because **Cost provided Brown with the evidence in question**.  At trial, Brown intended to use Plaintiff's Trial Exhibit 23, which is Cost's own summary of the percentage of females employed by Cost and its sister-enterprise, Franco, during the years 2001 and 2002.  See, Plaintiffs Trial Exhibit 23

5

**(Exhibit 2)**.  However, in the face of Cost's strenuous objections (sustained by the Court) to Brown's efforts to introduce evidence of Cost's chronic failure to hire females, Brown never had an opportunity to offer the exhibit into evidence.

Finally, Cost ignores significant portions of the case holdings which it cites in ostensible support of its arguments.  In **Hazelwood School District v. U.S.**, 433 U.S. 299 (1977), a pattern or practice case, the Supreme Court expounded upon its reasoning in **Teamsters**, noting that in the latter case the plaintiffs had chosen to buttress their evidence by comparing the proportions of African Americans in the employer's workforce and those within the general population of the surrounding community.  In the Supreme Court's view, such a comparison was "highly probative," given that the jobs in question required skills that many persons already possessed or could readily acquire.  **Hazelwood**, 433 U.S. at 308 n. 13.  In other words, in **Teamsters**, the Supreme Court implicitly rejected the notion that a plaintiff must produce specific applicant pool data for a position which does not require prior training or experience.  That very situation is presented here (albeit not in the form of a class action practice or pattern case), because Cost did not require applicants for the job of mason tending to demonstrate any prior training or experience, and instead accepted every union referral that LIUNA sent to it.  Testimony of Ronald Barrett, Vol. 2 at 144-5 (mason tending skills typically learned on the job; no skill or experience prerequisites to performing mason tending work; no prerequisites for joining LIUNA ); Dean Taylor, Vol 3 at 57 (Cost has hired mason tenders with no prior experience ["I try not to, but sometimes, yeah."]).  Thus, the only foundation that Brown could have been required to

6

demonstrate was essentially no foundation, because the relevant comparison for a job requiring no prior skills or experience is the ratio of females in the community at large, i.e, 1:1.

Cost also fails to recognize that different evidentiary standards apply in disparate impact and disparate treatment cases. Thus, while Cost cites the Ninth Circuit case of **Moore v. Hughes Helicoptors**, 708 F.2d 475 (9th Cir. 1983), that case discusses the standards applicable to disparate impact cases, and not the standards applicable to disparate treatment cases, such as is presented here. See, Defendant's Brief at 7.

Cost also relies on case law that is inapposite to the present case and otherwise in conflict with the law of this Circuit. Cost cites **Hagans v. Andrus**, 651 F.2d 622 (9th Cir. 1981), for the holding that a plaintiff who proffers statistical evidence of underrepresentation of females in a job category requiring specific skills must first establish the gender profile of the pool of applicants having those skills. Cost's reliance is misplaced for two reasons. First, the Third Circuit, in the age discrimination case of **Bruno v. W.B. Saunders Co.**, 882 F.2d 760, 766-67 (3d Cir. 1989), permitted the plaintiff to present evidence of a statistical disparity in promotions and transfers for older employees without regard to the qualifications for the positions to which the successful employees were transferred or promoted. The Court noted that because the plaintiff in **Bruno** was seeking individual as oppose to class-based relief, the evidentiary bar was much lower:

> Unlike the main cases cited by the defendants, this is not a class action disparate impact or [class action] disparate treatment case. In such cases, statistical evidence that does not account for minimum objective qualifications may not measure disparities among comparably qualified workers, rather than

> disparities in qualifications . . . . By contrast, in individual disparate treatment cases such as this, statistical evidence, which may be helpful, though ordinarily not dispositive, need not be so finely tuned.  In individual disparate treatment cases such as this, a general rule requiring that all statistical evidence account for minimum objective qualifications would not be broadly useful . . . The statistical evidence in this case is being used to bolster the plaintiff's case that the defendants' articulated reason for an individual employment decision is a pretext.  ***Even though it does not account for the minimum objective qualifications of the positions into which transfer or promotion was possible, we conclude that the studies are 'relevant'*** . . . .

Id. (citations omitted)(emphasis supplied).  Second, and as previously mentioned, because the job that Brown sought had no minimum objective qualifications, there was no occasion for Brown to identify a specific pool of applicants having specific skills. Instead, the only relevant ratio for comparison would have been the ration of females to males in the general population, 1:1.  **Hazelwood**, *supra*.

### Brown preserved her objection to the Court's wording of the Second Interrogatory.

Cost argues that Brown waived her objections to the Second Interrogatory, because when the parties last discussed the issue with the Court, Brown did not raise an objection to the specific wording of this item.  Defendant's Brief at 19-20.  This argument ignores the extended discussion between Brown's counsel and the Court, in which counsel insisted that the issue of job availability be presented as not confined to a single day, but rather to the period July 31, 2002 *or* any time thereafter.  See, Vol. 4, at 3-4; 5-40.  The Court denied counsel's request, and instead opted to include boilerplate language from **McDonnell Douglas** to articulate the second element of the plaintiff's prima facie case.  Vol. 4 at 17.  That language required Brown to show job availability as of the day she applied, July 31, 2002.  The Court's decision to use such

8

language rendered irrelevant any job openings occurring after July 31, 2002, to Brown's detriment.

In **Smith v. Borough of Wilkinsburg**, 147 F.3d 272 (3rd Cir. 1998), the Third Circuit held that a party preserves for appeal an issue over the wording of a special interrogatory where the party demonstrates that it raised the issue before the court, and made its position clear to the court, and then suffered an adverse ruling.  Id. at 277.  As the transcript makes clear, Brown demanded that the Court adopt language regarding job availability that would require Brown to demonstrate no more than that Cost filled laborer vacancies on *or after* July 31, 2002.  Vol. 4 at 4.  The Court, following a lengthy exchange with both parties' counsels, stated that it would use the language from **McDonnell Douglas**.  Vol. 4 at 17.  Thus, Brown has not waived her objection to the language of the Second Interrogatory.

## Conclusion

For the reasons stated above, Plaintiff respectfully requests that the Court grant the Plaintiff's Amended Motion for New Trial.

    Respectfully submitted,

/s/ Richard S. Matesic
Richard S. Matesic
PAID No. 72211
Edward A. Olds
PA ID No. 23601
1007 Mount Royal Boulevard
Pittsburgh, PA 15223
412.492.8975

9

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the forgoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to:

>Michael J. Pawk, Esquire
>LUTZ, PAWK & McKAY
>The Morgan Center Building
>Suite 102
>101 East Diamond Street
>Butler, PA 16001
>lpm@zoominternet.net

Date: February 22, 2006                                /s/ Richard S. Matesic
                                                        Richard S. Matesic