IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KATHLEEN BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 03-224 Erie |
| v. ) | |
| ) | |
| COST COMPANY ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

McLAUGHLIN, J.

This civil action involves claims of employment discrimination brought by the Plaintiff Kathleen Brown ("Plaintiff" or "Brown") against the Defendant Cost Company ("Defendant" or "Cost"), pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. Brown asserted that Cost discriminated against her on the basis of her sex when it failed to hire her as a laborer on a job site run by Cost on July 31, 2002. A jury trial was conducted on June 6, 2005 through June 10, 2005. On June 10, 2005, the jury returned a verdict in favor of Cost. See Special Interrogatories [Doc. No. 46]. Presently pending before the Court is Plaintiff's Motion for a New Trial pursuant to Rule 59 of the Federal Rules of Civil Procedure.

### I. STANDARD OF REVIEW

Rule 59(a) of the Federal Rules of Civil Procedure allows a party to seek relief from a judgment by filing a motion for a new trial. This relief may be sought on the grounds "that the verdict is against the weight of the evidence, that damages are excessive," that the Court committed substantial errors of law in the admission or rejection of evidence or instructions to the jury, or that the trial was otherwise not fair to the moving party. Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940).

The decision of whether or not to grant a new trial "is committed to the sound discretion of the district court." Bonjorno v. Kaiser Aluminum & Chem. Corp., 752 F.2d 802, 812 (3d Cir. 1984); see also Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 36 (1980); Wagner v. Fair Acres Geriatric Ctr., 49 F.3d 1002, 1017 (3d Cir. 1995). The district court's latitude varies, however, depending on the type of error alleged. Klein v. Hollings, 992 F.2d 1285, 1289-90 (3d


Cir. 1993). The court's latitude "is broad when the reason for interfering with the jury verdict is a ruling on a matter that initially rested within the discretion of the court." Id. In this regard, however, even if the court determines that an error was made on the law, it should only grant a new trial when the movant was prejudiced by the error. See Hulmes v. Honda Motor Co., Ltd., 960 F.Supp. 844, 849 (D. N.J. 1997).

## II. DISCUSSION

Brown argues that she is entitled to a new trial because: (1) the Court's verdict form was erroneous; (2) the Court erred in excluding evidence of a disparity between men and women at the Cost job site; and (3) the Court erred in granting Cost's motion in limine with respect to the introduction of evidence regarding Franco Associates, LP, a separate corporate entity. We will address Brown's arguments separately.

### A. Whether there was error in the verdict form

Brown contends that she is entitled to a new trial based on alleged errors in the phrasing of the Court's Special Interrogatory number two.[1] Essentially, Brown claims that the issue of job

---

[1] Interrogatories 1 and 2 as answered by the jury appear below:

1) Do you find that Plaintiff Kathleen Brown has proven by a preponderance of the evidence that she applied for a laborer position on July 31, 2002?

   YES __X__    NO _____

   If you have answered "yes" to question 1, please continue to question 2. If you have answered "no" to question 1, please do not answer questions 2, 3, 4, 5 and 6. Please sign and date this form and notify my courtroom staff that you have completed your deliberations. My staff will then escort you back into the courtroom.

2) Do you find that Plaintiff Kathleen Brown has proven by a preponderance of the evidence that a laborer position was available at Cost Company when she applied?

   YES _____    NO __X__

   If you have answered "yes" to question 2, please continue to question 3. If you have answered "no" to question 2, please do not answer questions 3, 4, 5 and 6. Please sign and date this form and notify my

availability should not have been restricted to July 31, 2002, but instead, the jury should have been able to consider whether any laborer vacancies arose within a short time after she expressed her interest in such a position on July 31, 2002. Plaintiff's Brief pp. 16-17.

Cost argues, however, that any objection that Brown now asserts to that portion of the Special Interrogatory was waived. Even in the absence of waiver, Cost argues that in the alternative there was no error of law in the language that was utilized. Defendant's Brief pp. 18-20.

We begin by noting that the language in the Special Interrogatory form precisely tracked the language of the Jury Charge that had *specifically been requested by Brown's counsel.*[2]

---

> courtroom staff that you have completed your deliberations. My staff will then escort you back into the courtroom.
>
> • • •

[Doc. No. 46].

[2]The relevant portion of the exchange between the Court and Brown's counsel is set forth below, as well as the portion of the charge, dealing with job vacancy:

> • • •
>
> THE COURT: Before we talk about this, let me raise an issue here. You'll note in this draft charge, you have two dates; July 31st and August 23rd. Now it strikes me that all you really need to be is turned down once in order to get your damages.
>
> <u>Are we – I guess this is for you, Mr. Matesic. Are you going to go to the jury here or try to go to the jury on two operative dates, or just the July 31st date, where she showed up with whatever she showed up with?</u>
>
> <u>MR. MATESIC: Just the July 31st date.</u>
>
> • • •

See Trial Tr., June 9, 2005 p. 3 (emphasis added).

> THE COURT: Let's return yet again. Do you have objections to the charge?
>
> MR. PAWK: We don't, Judge.
>
> THE COURT: How can we improve the charge then?
>
> MR. MATESIC: I guess I'll limit it to one comment then. Page 9,

3

second full paragraph. I believe that this paragraph is far too restrictive, given the evidence of record.

THE COURT: Which one? "Brown cannot prove"?

MR. MATESIC: That she has to prove that on the date she applied, there was one or more – on the day that she applied, there was a labor position which was open and that position remained open and Cost continued to seek applications from persons of her qualifications.

THE COURT: That, by the way, is precisely the prong of the prima facie case that you wanted me to include.

MR. MATESIC: Right. Well, then, let me say this: Upon further consideration, what the facts have shown as of right now is that there were laborer positions – I'll restate that. Brown had – according to Brown's testimony, she had delivered a piece of paper with her name and contact information on it, and after the date that she did that, a position arose, which Cost filled. And our position is that the facts in evidence show that – the facts in evidence show that she was discriminated against not only on July 31st, but also on August 14th and also on August 18th.

And so I would suggest that the charge be revised to read – and I'm only revising the first three lines here. Well, my revision is restricted to the first three lines. If you find that Brown applied for a laborer's position on July 31st, 2002, that one or more laborer positions were open when she applied, and that one or more laborer positions remained open, and Cost continued to seek applications from persons of her qualifications.

THE COURT: Isn't that what I have?

MR. MATESIC: Not one or more.

THE COURT: Well, that – a laborer position – all you need is one, don't you?

MR. MATESIC: What this suggests to the jury is luck of the draw. She has to show up at exactly the right moment in time and be denied at one precise moment.

THE COURT: All right. Then I'll say that one or more labor positions were open, because I don't really see what the difference is. With that correction, are you satisfied with the charge?

MR. MATESIC: Yeah.

THE COURT: What I'm going to say is if you found that Brown applied for a labor position on July 31st, 2002, and that one or more laborer's positions were open when she applied, and that one or more laborer's positions remained open, and Cost continued to – that's what I'll put in.

Where the alleged error is invited by a party through her counsel, even "plain error" will be deemed waived. See 2660 Woodley Road Joint Venture v. ITT Sheraton Corp., 369 F.3d 732, 744 (3rd Cir. 2004) (failure to object to erroneous instruction tantamount to invited error); United States v. Stewart, 185 F.3d 112, 127 (3rd Cir. 1999), cert. denied, 528 U.S. 1063(1999) (court will only reverse under plain error doctrine where party did not invite error); United States v. West Indies Transport, Inc., 127 F.3d 299, 306 (3rd Cir. 1997) (error in challenged jury instruction was invited where party's proposed instruction was remarkably similar to that actually given); Herman v. Hess Oil Virgin Islands Corp., 524 F.2d 767, 772 (3rd Cir. 1975) (where trial court followed party's proposal, any error at all was invited error); Maloney v. Tunnell, 218 F.2d 705, 707 (3rd Cir. 1955) (plaintiff may not claim as error the giving of an instruction which he in substance requested); Drames v. Sun River Investment, S.A., 820 F. Supp. 209, 215-16 (E.D.Pa. 1993) (no error is present where the instructions to which the moving party objects are practically identical to the proposed jury instructions submitted by the movant); aff'd, 17 F.3d 1429 (3rd Cir.

---

> MR. MATESIC: Right there.
>
> THE COURT: Then we're good. I'll make that change on there. Then we're ready to go. ...
>
> • • •

See Trial Tr., June 9, 2005 pp. 155-157.

Consistent with the agreement reached during the charge conference set forth above, the Court charged as follows:

> • • •
>
> If you find that Brown applied for a laborer's position on July 31, 200, and that one or more laborer positions were open when she applied, and that one or more laborer positions remained open and Cost continued to seek applications from person's of her qualifications, you must then determine whether Cost intentionally discriminated against Brown because of her sex.
>
> • • •

See Trial Tr., June 10, 2005 pp. 38-39.

5

1994) (Table case); Philadelphia Fast Foods, Inc. v. Popeyes Famous Fried Chicken, Inc., 647 F. Supp. 216, 230 (E.D.Pa. 1986) (plaintiff cannot complain to court's instructions when court adopted their own proposals). Based upon Brown's counsel's unambiguous request for the very language which he now suggests is erroneous, and consistent with the above case law, we find that Brown's objections in this regard have been waived.

Alternatively, on the merits, we find that the language in the Special Interrogatories and Jury Charge relative to job availability was not erroneous. It was undisputed that Cost was required to hire employees for the construction site from the union halls first. See Trial Tr., June 7, 2005 p. 146; Trial Tr., June 9, 2005 pp. 64-66. Only when applicants available through the union halls were exhausted, did Cost hire directly off the street. See Trial Tr., June 7, 2005 pp. 147-148; Trial Tr. June 8, 2005 p. 90. The undisputed evidence further revealed that Cost's labor needs fluctuated on a daily basis on the job site. See Trial Tr., June 7, 2005 pp. 171-172; Trial Tr. June 9, 2005 p. 130. Given the constantly changing job needs, the practice was to fill a vacant position was soon as possible through the hiring of walk-ons. See Trial Tr., June 9, 2005 p. 15. In short, given the daily fluctuations in laborer needs, it was impossible to predict when future vacancies would arise. Consequently, the undisputed factual record in this case is materially different than those cases which have held that a vacancy may be found to exist where a vacancy becomes available within a short period of time after the initial application. See e.g., Gourley v. Home Depot, 2001 WL 755102 at *4 (E.D.Pa. 2001) (plaintiff applied for position, was interviewed, passed a drug test, and was told to contact store for start date; court held plaintiff need not show vacancy on exact date he applied); McLean v. Phillips-Ramsey, Inc., 624 F.2d 70, 71-72 (9th Cir. 1980) (plaintiff applied for position with advertising agency and sent a follow up letter but was not hired for position that became available one month later; court held plaintiff should have been considered for position with employer while application was on file); Grant v. Bethlehem Steel Corp., 635 F.2d 1007, 1016-17 (2d Cir. 1980), cert. denied, 452 U.S. 940 (1981) (court held rejection of plaintiffs' claims because they failed to apply at correct times made little sense where employer anticipated its needs and hired persons before jobs became available and were announced).

In addition, the Minority Recruitment Memorandum, see Defendant's Ex. A, supplied by

Brown on July 31, 2002 failed to provide a telephone number or current home address. See Equal Employment Opportunity Commission v. Metal Service Co., 892 F.2d 341, 348 (3rd Cir. 1990) (in the absence of a formal application, a plaintiff must show that he "made every reasonable attempt to convey his interest in the job to the employer"); Hill v. Metropolitan Atlanta Rapid Transit Authority, 841 F.2d 1533, 1544 (11th Cir. 1988) (affirming dismissal of discrimination claim where plaintiffs' submitted incomplete applications). In light of the daily changing labor needs discussed above, the scant contact information provided by Brown made if difficult, if not impossible, for Cost to have contacted her with respect to future openings even if that had been its practice.

### B. *Whether the Court erred in excluding evidence*

In an attempt to circumstantially demonstrate gender animus, Brown sought to introduce evidence of the disparity between men and women on Cost's job site. At the outset we note that an employment discrimination plaintiff is not precluded from introducing statistical evidence as circumstantial evidence of discrimination in a disparate treatment case. Abrams v. Lightolier, Inc., 50 F.3d 1204 (3rd Cir. 1995). We recognized this principle during trial, and specifically ruled that Brown *was not* precluded from introducing this evidence *provided* an appropriate foundation was proffered for its admission. See Trial Tr. June 8, 2005 pp. 3-4; 12-13. In this regard we stated:

> ... I'm not precluding you from doing this, but I'm going to say this: ... [t]he mere fact that there were no women working at the job site in the absence of any other contextual evidence such as the size of the pool, the available – the women who would have been available from the union or otherwise, the number of qualified women who would have been available, the number of women who applied – in other words, all those factors that form the availability pool, in the absence of that, the raw figure of zero is, in my view, irrelevant, and it would cause the jury to speculate.
>
> • • •
>
> Understand, I'm not precluding you from getting into that, but you just are going to need some evidence from which a jury could draw some conclusions about the availability of the pool. If you can do that, then I'm going to let you get into that.

See Trial Tr., June 8, 2005 pp. 12-13; 23. Brown failed to lay the requisite foundation and the evidence was excluded. See Trial Tr., June 8, 2005 pp. 51-52; 136-138.

We find no error in the exclusion of this evidence under the circumstances of this case. The Third Circuit has consistently held that "raw numerical comparisons, ... not accompanied by any analysis of either the qualified applicant pool or the flow of qualified candidates over a relevant period of time" are not probative of alleged discriminatory motive. Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509, 543 (3rd Cir. 1993), cert. denied, 510 U.S. 826 (1993); Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1112 n.4 (in discussing statistics submitted in an ADEA case, court stated "[w]ithout any demonstration of the statistical significance of [the] data, a factfinder could not reasonably accord it much if any weight"); Mazus v. Dept. of Transportation, 629 F.2d 870, 875 (3rd Cir. 1980), cert. denied, 449 U.S. 1126 (1981) (finding that plaintiff's statistical source did not accurately reflect the percentage of females interested in the work force in question); see also, Riding v. Kaufmann's Department Store, 220 F. Supp. 2d 442, 459 (W.D.Pa. 2002) (to carry evidentiary weight, statistics must be relevant, material and meaningful; statistics out of context do not raise an inference of discrimination); Johnson v. Penske Truck Leasing Co., 949 F. Supp. 1153, 1177 (D.N.J. 1996) (rejecting raw statistical evidence without any corresponding analysis).

Brown argues, however, that her failure to have laid a foundation should have been excused given the fact that there were no women at the Cost job site. See Plaintiff's Brief pp. 8-10. She relies primarily on, *inter alia*, International Brotherhood of Teamsters v. United States, 431 U.S. 324 (1977), for the proposition that in an "inexorable zero" case, an inference of discrimination can arise in the absence of any foundational requirement. We do not view Teamsters as necessarily eliminating a foundational requirement in a disparate treatment case where there are no members of the plaintiff's protected class in the relevant workforce. In fact, there was evidence in Teamsters that members of the plaintiffs' class were available for work, had access to the job site, and were qualified.

Moreover, Brown's citation to additional authorities in her Brief do not compel a contrary conclusion. See e.g., Bruno v. W.B. Saunders Co., 882 F.2d 760 (3rd Cir. 1989), cert. denied, 493 U.S. 1062 (1990) (plaintiff presented statistical studies prepared by an expert comparing whether employees over 40 received transfers or promotions in proportion to the percentage of all employees over 40); United States v. Gregory, 871 F.2d 1239, 1245 (4th Cir. 1989), cert.

denied, 493 U.S. 1020 (1990) (applicant flow data not required to prove intentional discrimination through statistics, but court took judicial notice of the fact that 50% of the relevant labor pool was comprised of women); Daines v. City of Mankato, 754 F. Supp. 681, 698 (D.Minn. 1990) (when no applicant flow data was available, standard and accepted statistical sources for employment data were utilized).[3]

Finally, the excluded evidence was relevant, if at all, only on the issue of discriminatory animus. Given the jury's finding that there was no job available on July 31, 2002, the jury never passed on, nor was required to pass on, whether gender animus was a motivating factor in Cost's failure to hire Brown. Simply stated, even if the exclusion was erroneous, it was non-prejudicial given the jury's response to the Special Interrogatories. Cf. Citizens Financial Group, Inc. v. Citizens National Bank of Evans City, 383 F.3d 110, 123 (3rd Cir. 2004) (alleged error found harmless in light of jury's finding) cert. denied, 125 S.Ct. 1975 (2005); Polito v. Continental Casualty Co., 689 F.2d 457, 464 (3rd Cir. 1982) (court's refusal to submit separate tort claim to jury harmless error given the jury's finding on another issue); D'Angelo v. ADS Machinery Corp., 128 Fed.Appx. 253, 256 (3rd Cir. 2005) (given jury's failure to reach issue, no prejudice arising from court's decision to permit introduction of evidence); Easter v. Grassi, 51 Fed.Appx. 84, 88-89 (3rd Cir. 2002) (no reversible error in admitting evidence relevant to respondeat superior liability where jury never reached issue of respondeat superior liability).

### C.   *Whether the Court erred in granting Cost's motion in limine*

Finally, Brown challenges the Court's ruling on Cost's motion in limine regarding Franco Associates, LP ("Franco"). See Motion in Limine [Doc. No. 36]. Franco is a company owned and operated primarily by Charles Cost's daughter and wife. See Motion in Limine [Doc. No. 36] ¶ 5. According to Brown, Franco was created by Cost for the specific purpose of capturing minority set-aside contract dollars for women owned businesses. See Plaintiff's Brief p. 17. Brown sought to introduce evidence of Franco's business practices in order to demonstrate

---

[3] Brown also sought to introduce evidence of Cost's alleged failure to comply with various minority hiring goals under various federal compliance regulations, see, e.g., 41 C.F.R. § 60-4.1 et seq., as well as its failure to allegedly adhere to its own internal EEO policies. As the Court made clear many times on the record in rejecting this evidence, any alleged failure of Cost to have met various suggested quotas was irrelevant to the issues driving this case. See Trial Tr., June 8, 2005 pp. 23, 126-127; Trial Tr., June 9, 2005 pp. 39-40, 73. And, in any event, under Fed.R.Civ.P. 403, any minimal relevance it may have had was far outweighed by the potential to confuse the jury.

Cost's reckless disregard for equal employment goals, as well as its intention to discriminate on the basis of gender. See Trial Tr., June 6, 2005 pp. 10-14. We precluded Brown from eliciting testimony and/or other evidence regarding Franco's alleged business practices on the grounds that such evidence was irrelevant to Brown's action against Cost, and any marginal relevance would result in the potential for jury confusion. See Trial Tr., June 6, 2005 pp. 30-31. We concluded that the issue of Cost's reckless indifference to Brown's rights could be squarely put before the jury relative to Cost's management actions. Id. at p. 31.

We find no error in our exclusion of the proffered evidence regarding Franco. The Court has broad discretion in determining the admissibility of evidence at trial. See Becker v. ARCO Chemical Co., 207 F.3d 176, 180 (3rd Cir. 2000); Link v. Mercedes-Benz of North America, Inc., 788 F.2d 918, 922-23 (3rd Cir. 1986). Because Franco was not a party to the action and Brown never sought employment with Franco, any evidence regarding Franco's business practices was simply irrelevant to Cost's alleged discriminatory animus, and the potential for jury confusion and delay outweighed any minimal probative value of such evidence. See David v. Pueblo Supermarket of St. Thomas, 740 F.2d 230, 238 (3rd Cir. 1984) (relevant evidence may be excluded on the basis of confusion of the issues and considerations of undue delay).

### III. CONCLUSION

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KATHLEEN BROWN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>COST COMPANY )<br>)<br>Defendant. ) | Civil Action No. 03-224 Erie |

## ORDER

AND NOW, this 3rd day of March, 2006, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED THAT the Plaintiff's Amended Motion for New Trial [Doc. No. 52] is DENIED.

/s Sean J. McLaughlin
United States District Judge

cm: All counsel of record.

11